UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| SmarterSwipe, Inc., | Case No. 2:24-cv-00299-CDS-MDC |
| Plaintiff | Order Granting in Part Plaintiff/Counterdefendant's Motion for Default Judgment Against Defendants Carlos Navarrete, Carem Arrhimi, and Ethan Belloli-Ramos |
| v. | |
| Carlos Navarrete, et al., | |
| Defendants | [ECF No. 99] |

      Plaintiff/counterdefendant SmarterSwipe, Inc., filed a motion for default judgment against defendants/counterplaintiffs Carlos Navarrete, Carem Arrhimi, and Ethan Belloli-Ramos (collectively, "Default Defendants"). Mot., ECF No. 99. SmarterSwipe filed a certificate of service indicting they mailed a copy of the motion to the Default Defendants on July 28, 2025. Cert. of serv., ECF No. 100. The deadline to file an opposition to the motion has long passed. *See* ECF No. 99 (responses due by August 8, 2025); *see also* Local Rule 7-2(b) (the deadline to file and serve any points and authorities in response any motion except one for summary judgment is 14 days after service of the motion). For the reasons set forth herein, the motion for default judgment is granted.

I.    **Background**[1]

      Plaintiff SmarterSwipe is a Nevada corporation that provides electronic payment services to other businesses. ECF No. 45 at 3. SmarterSwipe brought this action against the Default Defendants and others seeking to recover for tort and contract claims. *See* First am. compl. ECF No. 45. On June 27, 2025, I adopted the report and recommendation (R&R) of the magistrate judge recommending that I strike the Default Defendants' answer as a sanction for failing to comply with court orders related to discovery. *See* Order adopting R&R, ECF No. 95;

---

[1] Unless otherwise noted, the court only cites to SmarterSwipe's first amended complaint (ECF No. 45) to provide context to this action, not to indicate a finding of fact.

*see also* R&R, ECF No. 94. As part of my order accepting the R&R, SmarterSwipe was ordered to seek default against the Default Defendants by July 28, 2025. ECF No. 95 at 4. SmarterSwipe timely complied.

## II.  Legal standard

Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a two-step process. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (explaining the process). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After default is entered, a party may seek entry of default judgment under Rule 55(b). The decision to grant a motion for entry of default judgment is within the discretion of the court. *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). "Entry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *Warner Bros. Ent. Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). "Default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court is not required to make detailed findings of fact." *Id.* "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

## III.  Discussion

In accordance with Rule 55(a), SmarterSwipe has satisfied the procedural requirements for default judgment as the clerk has entered a default against the Defaulted Defendants. Default, ECF Nos. 96–98. Because SmarterSwipe has satisfied the procedural requirements for default

judgment, I consider whether default judgment is warranted after considering the *Eitel* factors. As explained below, after evaluating each factor, I find they weigh in favor of entering default judgment, so I grant SmarterSwipe's motion.

### A. The possibility of prejudice to the plaintiff.

The first factor easily weighs in favor of granting default judgment in SmarterSwipe's favor. The Defaulted Defendants have failed to comply with multiple court orders regarding discovery request, then failed to object or otherwise respond to the recommendation that I strike the answer as a sanction for failing to comply with those orders. And further, the Defaulted Defendants failed to oppose or otherwise respond to the motion for default. The record supports that SmarterSwipe will suffer prejudice if default judgment is not entered as it will have no other means to litigate its claims. *See PepsiCo*, 238 F. Supp. 2d at 1177 ("Potential prejudice to Plaintiffs favors granting a default judgment. If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

### B. The merits of the plaintiff's substantive claims and the sufficiency of the complaint.

The second and third Eitel factors favor a default judgment when the plaintiff "state[s] a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978). Here, SmarterSwipe brings civil conspiracy, breach of a contract, breach of the covenant of good faith and fair dealing, conversion, tortious interference with contractual relations, accounting, unjust enrichment, fraud, and misappropriation of trade secrets against the Defaulted Defendants. *See* ECF No. 45.

Breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987). A breach of contract claim under Nevada law requires (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013).

The covenant of good faith and fair dealing "prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *State, Dep't of Transp. v. Eighth Jud. Dist. Ct.*, 402 P.3d 677, 683 (Nev. 2017) (quotations marks omitted). An implied covenant of good faith and fair dealing exists in all contracts. *See Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007). The covenant of good faith and fair dealing "prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Id.* "When one party performs a contract in a manner that is unfaithful to the purpose of the contract," as a result, "the reasonable and justified expectations of the other party are denied, [and] damages may be awarded against the party who did not act in good faith." *Perry v. Jordan*, 900 P.2d 335, 923 (Nev. 1995).

In Nevada, "conversion is a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion, or defiance of such rights." *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287 (Nev. 2006). Conversion may be established by the refusal of a demand for the property. *Blige v. Terry*, 540 P.3d 421, 431 (Nev. 2023).

Under Nevada law, the elements required to allow a remedy of an accounting are: (1) a fiduciary relationship exists between the plaintiff and defendant; (2) the relationship between the plaintiff and defendant is founded in trust and confidence; and (3) the defendant has a duty to render an accounting to the plaintiff to determine damages resulting from any misallocation of funds. *G. K. Las Vegas, Ltd. P'ship v. Simon Prop. Group, Inc.*, 460 F. Supp. 2d 1246 (D. Nev. 2006); *Foley v. Morse & Mowbray*, 848 P.2d 519 (Nev. 1993).

To establish a claim of for tortious interference with contractual relations, a plaintiff must show: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) damages." *Consol. Generator-Nev., Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1255 (Nev. 1998). Finally, to state a claim for civil conspiracy under Nevada law, a plaintiff must allege "a combination of two or more persons, who by some concerted action,

4

intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983) (citations omitted). Nevada law does not require that the unlawful objective be a tort for civil conspiracy liability to attach. *Cadle Co. v. Woods & Erickson, LLP*, 345 P.3d 1049, 1052 (Nev. 2015).

As alleged in the complaint, the parties entered into contracts with the Defaulted Defendants "to use [their] best efforts to solicit merchant applications and agreements for the credit card processing, automated teller machines, check clearing, capital lending/loans, and equipment sale and leasing services provided by SmarterSwipe and its Vertical Markets." *Id.* at ¶¶ 14, 17, 20. After entering into the contracts, the Defaulted Defendants allegedly conspired to breach their contracts in various ways. *See id.* at ¶¶ 37–59. Further, as part of the conspiracy, the Defaulted Defendants "unlawfully asserted control over the Plaintiff's property through the wrongful retention of highly valuable credit card processing equipment, illicitly taking Company information concerning its longstanding clients, and retaining commissions to which they have no rightful claim" and "wrongful[ly] exert[ed] of dominion over highvalue credit card processing equipment, misappropriation of proprietary information" that belonged to SmarterSwipe. *Id.* at ¶¶ 74–75. Finally, the complaint alleges there was a fiduciary duty between the plaintiff and the defendants. *Id.* at ¶ 135.

These allegations in the FAC are sufficient to states claims for civil conspiracy, breach of a contract, breach of the covenant of good faith and fair dealing, conversion, tortious interference with contractual relations, and accounting,[2] but not for unjust enrichment,[3] fraud,[4] or

---

[2] Although the court has doubts about whether there was fiduciary duty between the parties, the allegations are sufficient to state a claim under the "well-pleaded allegations" standard.

[3] To prevail on an unjust enrichment claim, the plaintiff must prove that (1) the plaintiff conferred a benefit on the defendants, which the defendants appreciated; and (2) the defendants accepted the benefit and retained it under circumstances making it inequitable to do so without paying the value thereof. *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012). However, "an unjust enrichment claim is not available when an express written contract exists." *Leasepartners Corp. v. Robert L. Brooks Tr.*, 942 P.2d 182, 187 (Nev. 1997). Here, the complaint alleges there was a written contract with each of the Defaulted Defendants, so plaintiff's unjust enrichment claim fails as a matter of law.

[4] To establish a fraud claim under Nevada law, a plaintiff must prove by clear and convincing evidence (1) a false representation; (2) the defendant knew or believed that the representation was false, or made

misappropriation of trade secrets.[5] Accordingly, having pled sufficient allegations for six claims against the Defaulted Defendants, both of these factors weigh in favor of entering default.

### C. The sum of money at stake.

In assessing the fourth *Eitel* factor, I consider "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether 'the recovery sought is proportional to the harm caused by [the] defendant's conduct.'" *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (quoting *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010)); *see also PepsiCo*, 238 F. Supp. 2d at 1176. The amount of money at issue here is significant: $5,815,538.14. ECF No. 99 at 13. As argued in the default motion, the Defaulted Defendants' misconduct caused extensive financial and reputational harm to SmarterSwipe. *See id.* at 13–14. And because the Defaulted Defendants have failed to defend against this case, SmarterSwipe would have no other way to recover damages from them. Consequently, this factor also weighs in favor of granting the default motion.

### D. The possibility of a dispute concerning material facts.

The fifth *Eitel* factor requires the court to weigh the possibility of a dispute regarding facts material to the case. *PepsiCo*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* (citation omitted). Since their counsel withdrew, the Defaulted Defendants have failed to defend against this action in any way, and as a result, their answer was stricken. Consequently, there is no

---

the representation without a sufficient basis; (3) the defendant intended to induce the plaintiff to act or refrain from acting in reliance on the representation; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff was damaged by its reliance. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992) (citing *Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975)). This claim does not support entry of default judgment because the complaint alleges the Defaulted Defendants made false representations to plaintiff's customers but not to the plaintiff, so the third and fourth elements are not met.

[5] "A plaintiff seeking relief for misappropriation of trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.'" *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)). Here, the complaint generally alleges trade secrets but they were not specifically identified nor was their existence proven.

argument or evidence to rebut the allegations set forth in the complaint. Thus, this fifth factor weighs in favor of entry of default judgment.

### E. Whether the default is due to excusable neglect.

The sixth *Eitel* factor requires the court to consider whether the defendant's default is due to excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177. The evidence does not suggest that the Defaulted Defendants failed to respond due to excusable neglect. Rather, their failure to respond to the default motion is consistent with their failure to defend themselves since their attorney withdrew in 2024. Thus, the sixth *Eitel* factor also weighs in favor of entry of default judgment. *See United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam) (holding that it was "perfectly appropriate" for the district court to enter default judgment against a defendant that failed to appear in the action).

### F. The strong public policy favoring a decision on the merits.

Finally, the seventh *Eitel* factor requires the court to consider the policy favoring a decision on the merits. "Cases should be decided [on] their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the Defaulted Defendants' failure to respond to the complaint "makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Thus, although this final *Eitel* factor always weighs against an entry of default judgment, it does not preclude me from entering one. "A decision on the merits is desirable, but under these circumstances, default judgment is warranted." *Nevada Prop. 1, LLC v. Kiwibank Ltd.*, 2020 WL 5633048, at *2 (D. Nev. Sept. 21, 2020).

## IV. Conclusion

IT IS HEREBY ORDERED that the SmarterSwipe's motion for default judgment [ECF No. 99] is GRANTED in part.

The Clerk of Court is kindly directed to enter judgment in favor of SmarterSwipe on the claims of civil conspiracy, breach of a contract, breach of the covenant of good faith and fair

dealing, conversion, tortious interference with contractual relations, and accounting against Carlos Navarrete, Carem Arrhimi, and Ethan Belloli-Ramos in the amount of $5,815,538.14.

The Clerk of Court is instructed to close this case.

Dated: January 8, 2026

_____
Cristina D. Silva
United States District Judge